**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4517**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

     v.

SHANITA MCKNIGHT,

        Defendant  - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Florence.   Terry L. Wooten, District Judge.
(4:07-cr-00787-TLW-1)

Submitted:  June 22, 2010        Decided:  July 6, 2010

Before SHEDD and DAVIS, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

Thomas M. Dawson, Leavenworth, Kansas, Lyle J. Yurko, YURKO &
ASSOCIATES, Charlotte, North Carolina, for Appellant.  Kevin F.
McDonald, Acting United States Attorney, Jeffrey Mikell Johnson,
Assistant United States Attorney, Columbia, South Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Shanita McKnight, a former Lake City, South Carolina police officer, was charged in a two-count indictment with conspiracy to possess with intent to distribute and conspiracy to distribute fifty grams or more of cocaine base and five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (2006), and extortion by a public employee, in violation of 18 U.S.C. § 1951 (2006). Following a jury trial, McKnight was found guilty of both charges and sentenced to 240 months of imprisonment on both counts, to run concurrently. McKnight now appeals, arguing that her trial counsel was ineffective. For the reasons that follow, we affirm.

On appeal, McKnight first argues that her counsel was ineffective because he represented her despite a conflict of interest, "which adversely affected his performance." When McKnight was arrested, she was questioned by investigating officers and agents while her attorney was present. The Government intended to offer the testimony of those officers, including that of Johnnie Bartel, a detective with the South Carolina Law Enforcement Division ("SLED"). However, McKnight's trial counsel believed that the testimony Bartel planned to give would be "substantially different" from what was actually said during McKnight's interview. As a result, McKnight now claims that her trial counsel was a material witness who should have

2

withdrawn from representation, and his failure to do so constituted "an actual conflict of interest" that impacted his performance as McKnight's trial counsel. McKnight asserts that because Bartel's testimony was among the "most critical evidence the jury heard," trial counsel should have withdrawn so that "he could have testified to exactly what he heard in the interview, perhaps critically wounding the Government's case." His failure to do so, according to McKnight, meant that counsel could not be a "key witness" for her, and "[t]here is no doubt that his conflict affected his performance."

"A claim of ineffective assistance of counsel should be raised by a habeas corpus motion under 28 U.S.C. § 2255 in the district court and not on direct appeal, unless it conclusively appears from the record that defense counsel did not provide effective representation." United States v. Richardson, 195 F.3d 192, 198 (4th Cir. 1999) (internal quotation marks and alterations omitted). To demonstrate ineffective assistance, a defendant must show that his "counsel's representation fell below an objective standard of reasonableness," and that the error was "prejudicial to the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 692, 694 (1984).

When a defendant raises a claim of ineffective assistance based on a conflict of interest, she must "demonstrate that an actual conflict of interest adversely affected [her] lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). If this showing is made, "[p]rejudice is presumed." Strickland, 466 U.S. at 692 (citing Cuyler, 466 U.S. at 350, 348). In other words, "a defendant who shows that a conflict of interest actually affected the adequacy of [her] representation need not demonstrate prejudice in order to obtain relief." Cuyler, 446 U.S. at 349-50.

The record before us does not conclusively establish that there was an actual conflict of interest that affected the adequacy of trial counsel's representation of McKnight. As McKnight alleged, counsel initially asserted that Bartel would testify contradictorily to what counsel recalled McKnight stating during her interview, and that should Bartel do so, counsel would have to ask the court to convene a perjury case and would have to make a record of the testimony. However, at the conclusion of Bartel's testimony, counsel expressly stated that "Agent Bartel's testimony did not include the objectionable information that I raised with the court."

Moreover, in her brief, McKnight fails to allege either that Bartel's testimony was inconsistent with what she said in the interview or that any of Bartel's testimony

4

describing her statements was incorrect or inaccurate. McKnight does note that trial counsel asked Bartel if he recalled a statement made by FBI agent Vincent Flamini during that interview that he had warned bar owners of police activity, which Bartel denied, as well as asking Bartel about McKnight's statement that she was not permitted to make drug arrests alone as a female officer, which was not recorded in his interview summary. However, although McKnight suggests that her trial counsel's recollection conflicted with Bartel's regarding Flamini's alleged statement, this does not appear conclusively in the record. Similarly, to the extent that McKnight challenges Bartel's recollection that she stated she had not made any drug arrests, the record again does not demonstrate that counsel's memory differed on this point, but only that counsel sought to challenge Bartel's credibility by questioning the absence of that alleged statement from his written report. Accordingly, because the record does not conclusively demonstrate that counsel was ineffective, we conclude that McKnight's claim is not properly before this court on direct appeal.

In her second claim, McKnight argues that counsel was ineffective at sentencing for failing to: (1) contest the quantity of drugs for which McKnight was held accountable; (2) assert that "the scope of [McKnight's] agreement and reasonable

5

forseeability prohibited [McKnight] from being accountable for the quantity assessed against [her] in paragraph 66 of the presentence report (119 kilograms of cocaine)"; and (3) argue for a one to one ratio for crack and powder cocaine. McKnight argues that counsel should have made the "scope and foreseeability argument" in § 1B1.3 of the U.S. Sentencing Guidelines Manual ("USSG") (2008), claiming that "it is a reasonable probability that the scope and foreseeability argument would have prevailed reducing [McKnight's] base offense level." She states that she never distributed drugs herself, and that under the application notes to USSG § 1B1.3, simply knowing that those she was giving information to sold large amounts of drugs does not make those drug quantities attributable to her. McKnight also argues that the drug activities of Lorenzo Jones and Keith Rose, two co-conspirators who testified against her and whose testimony provided the basis for the quantity of drugs attributable to her, "would have moved forward with or without the minimal information provided by McKnight and the arrest of the two would have and did occur anyway." McKnight asserts that if she should be held accountable for a quantity of drugs "it should be a far lesser amount," though she does not specify what amount.

Under USSG § 1B1.3(a)(1)(B), in a "jointly undertaken criminal activity," McKnight is responsible for "all reasonably

6

foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Here, the testimony of both Jones and Rose, known by McKnight to be drug dealers, established that McKnight provided information to them that allowed them both to distribute large quantities of crack cocaine in Lake City. Specifically, Jones testified that during the relevant time period, for two years between 2003 and 2005, he paid McKnight anywhere from two to four hundred dollars in exchange for information that enabled him to sell approximately thirty-six ounces, equal to one kilogram, of crack cocaine every week. Similarly, Rose testified that he paid McKnight two to three hundred dollars a week in exchange for information about police activity and impending drug busts in Lake City at locations where he sold drugs, and that he was purchasing approximately four and a half to five ounces of crack cocaine every week during the period he was paying for information from McKnight, between March 2003 and August 2005.

There is nothing in the record before us to suggest that the drug sales and distribution by Jones and Rose could have been unforeseeable to McKnight. Moreover, both Jones and Rose testified to the specific amounts they were able to purchase and re-sell each week during the period of time in which McKnight was providing this information to them. This amount, 119 kilograms of crack cocaine, was reflected correctly

7

in the PSR and her base offense level was calculated pursuant to that amount. Thus, there is nothing on the face of the record that suggests that counsel was ineffective for failing to challenge the drug quantity established in the PSR or that the quantity was not foreseeable to McKnight.

Additionally, although McKnight argues that counsel did not make a "foreseeability" argument, counsel challenged McKnight's role in the offense, to the extent that it was limited; that she did not initiate the conspiracy, sell drugs, or receive money for drug sales; and that she should be entitled to a downward departure. The court took careful consideration of the issue and, noting that McKnight was nonetheless responsible as a co-conspirator for the full amount of drugs distributed by those in the conspiracy, sentenced McKnight to a below-Guidelines sentence because of her otherwise minimal role in the conspiracy. Again, nothing in the record conclusively demonstrates that counsel's actions amounted to ineffective assistance; counsel argued for a reduction based on the facts of McKnight's participation in the conspiracy, and the court accepted counsel's argument in part and departed downward from the established Guidelines.

Finally, although McKnight asserts on appeal that counsel should have argued for a one-to-one ratio for crack and powder cocaine, she provides no argument in support of this

8

contention, and states only that "had [trial counsel] objected, it is probably [sic] that the trial court would have reduced the 100 to 1 ratio and further lowered [McKnight's] 20-year sentence." Nothing in the record, however, suggests that the court would have further reduced McKnight's sentence, and McKnight provides no facts in support of this claim. Thus, any conclusion by this court regarding counsel's failure to raise this argument would be premised on surmise or speculation. Accordingly, we conclude that McKnight's claims of ineffective assistance of counsel at sentencing also are not properly before this court on direct appeal.

For the foregoing reasons, we affirm McKnight's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED